# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In Re: | : Bankruptcy Case No. 06-21969JAD |
| | : |
| DAVID K. PIONTEK and | : Chapter 13 |
| ELEASHA M. BURKE, | : |
| | : Related to Document Nos. 20 and 31 |
| Debtors. | : |
| | : |

*******************************************

## MEMORANDUM ORDER DISMISSING CASE AS TO ELEASHA M. BURKE ONLY

      This Memorandum Order is yet another attempt by this Court to decipher the contours of the pre-bankruptcy credit counseling provisions of the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 ("BAPCPA").  The issue before the Court is whether the wife-debtor in this case may obtain a temporary waiver of the pre-bankruptcy credit counseling requirements imposed by the new statute due to, *inter alia*, the fact that the debtor lacked sufficient income to pay for such credit counseling services.  Because the Court finds (under the unique facts and circumstances of this case) that the debtors' inability to pay defense is without merit, the Court concludes that (a) the wife-debtor is not entitled to a temporary waiver of the pre-bankruptcy credit counseling requirements imposed by BAPCPA, and (b) the wife-debtor is presently ineligible to be a "debtor" in bankruptcy .  Under these circumstances, the Court will dismiss Ms. Burke as a debtor in this bankruptcy case without prejudice.

      By way of background, the debtors David K. Piontek and Eleasha M. Burke are husband and wife who jointly commenced this case by filing a voluntary bankruptcy petition under Chapter 13

on May 3, 2006. (Document No. 1 - Voluntary Petition).[1] BAPCPA amended the Bankruptcy Code effective October 17, 2005. As of the petition date in this case, and with limited exceptions, BAPCPA requires all debtors to obtain mandatory pre-bankruptcy credit counseling as a condition of debtor eligibility. See 11 U.S.C. § 109(h).

Consistent with BAPCPA, on the petition date Mr. Piontek filed a Certificate of Credit Counseling evidencing the fact that Mr. Piontek completed the pre-bankruptcy credit counseling briefing on April 7, 2006 as mandated by Congress. (Document No. 2 - Certificate of Credit Counseling). Initially no Certificate of Credit Counseling was filed by Ms. Burke in this case, and the Certificate of Credit Counseling filed by Mr. Piontek made no mention of whether Ms. Burke had obtained the requisite briefing from an approved credit counseling agency prior to the commencement of this joint Chapter 13 bankruptcy case. Ultimately, however, Ms. Burke filed a Certificate of Credit Counseling on May 18, 2006, and her Certificate of Credit Counseling represented that Ms. Burke obtained the mandatory credit counseling briefing on May 17, 2006, which was two weeks after the commencement of the case. (Document No. 9 - Certificate of Credit Counseling).

Because BAPCPA unequivocally requires all individual debtors to obtain a pre-bankruptcy credit counseling briefing as a condition of eligibility for bankruptcy relief, the Court entered an Order dated May 19, 2006 which, in effect, provided Ms. Burke with an opportunity to advise the Court of the basis upon which Ms. Burke asserts an exemption of the pre-bankruptcy credit counseling provisions of BAPCPA (i.e., whether Ms. Burke was seeking a waiver pursuant to the "exigent circumstances" temporary safe harbor as set forth in 11 U.S.C. § 109(h)(3) or whether she

---

[1] Pursuant to Fed.R.Evid. 201, the Court takes judicial notice of the admissions of the debtors as contained in documents filed of record in this bankruptcy case.

was seeking an exemption pursuant to the disability, incapacity or combat duty safe harbor of 11 U.S.C. § 109(h)(4)). (Document No. 12 - May 19, 2006 Order).

As to the former, the "exigent circumstances" temporary safe harbor, the May 19, 2006 Order required Ms. Burke to file with the Court:

> . . . a certification expressly setting forth the facts and circumstances supporting the debtor's contention that the debtor suffered from exigent circumstances meriting waiver. Such certification filed by the debtor must: (a) identify the "exigent circumstances" which the debtor alleges merits [sic] a waiver of the pre-petition credit counseling . . . identify the dates and time when the debtor requested a Section 109(h) "briefing" from an approved credit counseling agency or agencies, (c) identify and describe the manner in which the debtor contacted credit counseling agencies, (d) identify and describe the agencies actually contacted by the debtor, and (e) identify and describe the response(s) received from the approved credit counseling agencies, including whether the agencies contacted by the debtor, if any, were able to provide the requisite "briefing" within (5) days of the debtor's alleged request.

See Order at par. 2.

In response to the Court's Order, a "Certificate of Exigent Circumstances of Debtor, Eleasha M. Burke for Post-Petition Credit Counseling" was filed by the debtors on June 5, 2006. (Document No. 20 - Certificate of Exigent Circumstances). The Certificate of Exigent Circumstances was not signed or attested by Ms. Burke, and was instead signed by the debtors' counsel. Within the Certificate of Exigent Circumstances, the joint debtors alleged through counsel, in pertinent part, that:

    a.    The bankruptcy petition was filed in order to prevent a Sheriff's Sale of the debtors' principal residence after the debtors had exhausted "all non-bankruptcy avenues of relief to preserve their home";

    b.    Joint debtor Burke had to wait to obtain credit counseling in accordance with 11 U.S.C. § 109(h)(3), due to "dire financial conditions of the debtors";

    c.    Joint debtor Burke had been advised by third unidentified parties

>     (but not legal counsel) that she could complete the pre-petition credit counseling requirement after the bankruptcy was filed;
>
> d.  Joint debtor Burke obtained the credit counseling required by § 109(h) "in a short time period after filing, as is noted in the docket, when funds were available to pay for her credit counseling"; and
>
> e.  The equitable powers vested in this Court by way of 11 U.S.C. § 105 allow the Court to grant a temporary waiver of the pre-petition credit counseling requirements of 11 U.S.C. § 109(h) in order to "do substantial justice" and grant the debtor a "fresh start."

With respect to the latter, i.e., the Court's equitable powers, the debtors noted that "Piontek and Burke lacked the financial ability to put food on the table and pay for two credit counseling sessions simultaneously." See Document No. 20 - Certificate of Exigent Circumstances at n. 1. The debtors also remarked that "[i]t is illogical to believe that Congress intended the law to deprive the poor an equal opportunity to avail themselves of the law- it would result in [a] Dickenesque *Oliver Twist* situation." Id. at n. 2.

Because the Certificate of Exigent Circumstances filed on Ms. Burke's behalf did not adequately supply the "who, what, when and where" information that is necessary for the Court to make a substantive determination with respect to the exemption sought by Ms. Burke, the Court scheduled a June 22, 2006 hearing on the certification. Prior to, and at the hearing, the U.S. Trustee asserted extensive objections to the relief sought by Ms. Burke and requested that the Court dismiss Ms. Burke from this case contending that she is presently ineligible to be a debtor in bankruptcy. Upon the Court's consideration of the arguments of the parties, and the record made in this matter, the Court has no choice but to sustain the U.S. Trustee's objections and dismiss Ms. Burke from this Chapter 13 case.

For purposes of this Order, the Court has assumed that the circumstances surrounding the

commencement of the debtors' bankruptcy case (i.e., to stay a Sheriff's sale) constitute "exigent circumstances." Indeed, the Court has previously written on the exigent circumstances temporary safe harbor of 11 U.S.C. § 109(h)(3), and finds that there is no need to further elaborate on the subject. See In re Tomco, 339 B.R. 145 (Bankr. W.D. Pa. 2006); In re Miller, 336 B.R. 232 (Bankr. W.D. Pa. 2006).

In the matter *sub judice*, Ms. Burke (through counsel) represented to the Court that on April 7, 2006 Ms. Burke contacted an approved credit counseling agency along with her husband. However, at that time, Ms. Burke contended that she and her husband had only enough funds to pay for one credit counseling session (which cost $50 per person). Consequently, only Mr. Piontek received the requisite counseling, and Ms. Burke avers that she was "unable" to receive the counseling until a date certain after the commencement of this case. Given these circumstances, the issue before the Court is whether the debtors' alleged inability to pay for credit counseling is a sufficient reason for the Court to ignore the Congressional mandate found in 11 U.S.C. § 109(h)(3)?

As set forth more fully in this Court's prior opinion in In re Tomco, bankruptcy courts have wide discretion when they are called upon to make a determination as to whether the exigent circumstances meriting a waiver of the pre-bankruptcy credit counseling provisions of BAPCPA are "satisfactory." In re Tomco, 339 B.R. at 154-55. Notwithstanding the wide discretion, "the inquiry is whether the debtor was actually precluded by his or her circumstances from obtaining the briefing." Id. at 155. There is:

> . . . no bright line rule guiding a bankruptcy judge in this endeavor. How well educated are the debtors? What is their financial situation? Did the debtors have the ability to seek counsel at an earlier stage of the insolvency, but chose not to do so for reasons that are unacceptable to the court? Did any of these or other circumstances render the failure to obtain pre-petition credit counseling beyond the reasonable control of the debtors? These are the sorts of questions

>   that must be addressed by the Court on a case-by-case basis under 11
>   U.S.C. § 109(h)(3)(A)(ii).

Id.

Charles Dickens once wrote in his masterpiece *Great Expectations*, "Take nothing on its looks; take everything on evidence. There's no better rule." The Court in this case elects to take the advice of Mr. Dickens.

As a general proposition, it is this Court's opinion that a debtor who lacks sufficient resources to pay for credit counseling may, under the right circumstances, have a *de facto* "inability" to obtain pre-bankruptcy credit counseling for purposes of 11 U.S.C. § 109(h)(3)(A)(ii). Indeed, such "inability" to pay for credit counseling may be a "satisfactory" reason for the Court to grant a temporary waiver of the credit counseling requirements mandated by BAPCPA.

However, when the Court looks at the objective evidence in this case (as reflected in the undeniable admissions of the debtors in their respective Court filings), the Court finds that the debtors' inability to pay defense is not credible and is not persuasive.

It is clear to the Court that matters beyond the debtors' control did not impede Ms. Burke's ability to seek out and obtain the requisite credit counseling briefing. In fact, the credible evidence in this case is that Ms. Burke had the ability to pay for, and obtain, pre-bankruptcy credit counseling but for reasons that are inexplicable to the Court she did not.

For instance, it is suggested in the Certificate of Exigent Circumstances that Ms. Burke was advised by unidentified third parties (not counsel) that she could complete the pre-petition credit counseling requirement after the bankruptcy was filed. Assuming this is true, the fact of the matter

is that Ms. Burke was at all times material hereto represented by sophisticated bankruptcy counsel. Ms. Burke even paid such counsel a $400 retainer on March 31, 2006, which was more than one month before the bankruptcy was filed. Under these circumstances, Ms. Burke's reliance on advice of unnamed, non-legal counsel is hardly convincing.

With respect to the ability to pay the $50 credit counseling fee, the weight of the record is such that Ms. Burke had the ability to pay the credit counseling fee. Indicia of Ms. Burke's ability to pay the fee are the admissions of the debtors that are replete throughout their bankruptcy filings. By way of example, on March 31, 2006 the debtors remitted the $400 retainer to their bankruptcy counsel, of which $274.00 was used to pay the filing fee in this case. (Document No. 15 - Statement of Attorney Pursuant to Rule 2016(b)). Bankruptcy Rule 1007(b), however, permits filing fees to be paid in installments. The debtors surely had the ability to utilize $50 of the retainer to fund payment to the credit counseling agency prior to the bankruptcy and then defer payment of at least $50 of the bankruptcy filing fee for such additional time as may be permitted by the Bankruptcy Rules.

While the Court is appreciative of the debtors's financial situation, the Court notes that Schedule J reflects that the debtors have total monthly income of at least $2,361.64 and net monthly income of $550.64. Schedule I reflects various monthly expenses, including $55.00 per month for cable television and a contribution of $141.88 per month to Ms. Burke's 401(k) plan. While the Court is not suggesting that the cable television expense and the 401(k) contribution are unreasonable, the Court notes that the debtors could have also temporarily foregone such discretionary expenditures in order to have the funds necessary to accomplish the pre-bankruptcy credit counseling mandated by Congress. Schedule B filed by the debtors further provide that the debtors had, on the petition date, cash equal to $75.00 on hand and $165.00 in a checking account.

A portion of these funds too could have been utilized by the debtors to obtain the pre-bankruptcy credit counseling as well. Similarly, the debtors are not without other material assets. The debtors also (a) drive a 2004 T.S. Sedona valued at $19,000 and a 2005 Ford Explorer valued at $30,000, which result in monthly payments aggregating in excess of $1,000 dollars, and (b) own a residence valued at $170,000 and report secured claims of $152,000, leaving equity of $18,000. (Document No. 15 - Schedule A; Document No. 15 - Schedule B; Document No. 16 - Chapter 13 Plan).

The foregoing discussion does not even take into account the Bankruptcy Code's requirement that all approved credit counseling agencies must provide their services "without regard to [the debtors'] ability to pay the fee." See 11 U.S.C. § 111(c)(2)(B). At the hearing on this matter, counsel advised the Court that the debtors did not request that the credit counseling agency provide credit counseling on a pro bono or reduced fee basis.[2] Had such a request been made by the debtors and inappropriately denied by the credit counseling agency, the Court could conclude that the debtors lacked the ability to obtain the requisite credit counseling.[3] However, when no request is first made (and improperly denied), the Court cannot conclude that Ms. Burke's inability to obtain the credit counseling was due to circumstances beyond her reasonable control.

For all of the foregoing reasons set forth *supra*, the Court finds that the Certificate of Exigent Circumstances filed by joint debtor Eleasha M. Burke is deemed by the Court to be inadequate and unsatisfactory. Having failed to obtain the requisite pre-bankruptcy credit counseling, it is apparent

---

[2] Nor did the debtors introduce any evidence to the effect that such a request for *pro bono* or reduced fee services would have been futile.

[3] BAPCPA contains many provisions relating to oversight of credit counseling agencies. See, e.g., 11 U.S.C. § 111(b)(providing for U.S. Trustee approval of credit counseling agencies) and 11 U.S.C. § 111(e)(providing that the "district court may . . . investigate the qualifications of a nonprofit budget and credit counseling agency . . . to ensure the integrity and effectiveness of such agency"). In instances where approved credit counseling agencies improperly deny service to eligible debtors, the affected debtor and/or their counsel should advise the Court and the U.S. Trustee of such conduct.

that Ms. Burke is currently ineligible to be a debtor in bankruptcy. As the Court lacks the equitable power to re-write the Bankruptcy Code, see e.g. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988)(holding that the equitable powers of the bankruptcy courts may only be exercised within the confines of the Bankruptcy Code), the Court has no choice but to dismiss the bankruptcy case of debtor Eleasha M. Burke.[4] Tomco, supra.

Therefore, Eleasha M. Burke is hereby **DISMISSED** from this bankruptcy case **WITHOUT PREJUDICE AS TO HER ONLY** for failure to obtain a pre-petition credit counseling briefing in accordance with 11 U.S.C. § 109(h).

Dated: July 5, 2006

/s/ Jeffery A. Deller
Jeffery A. Deller
United States Bankruptcy Judge

Case Administrator Mail To:

Mr. David K. Piontek and Ms. Eleasha M. Burke
John C. Brzustowicz, Esq.
Ronda J. Winnecour, Esq. - Chapter 13 Trustee
Joseph S. Sisca, Esq. - Assistant United States Trustee

---

[4] The Court rejects the notion that the credit counseling briefing obtained by Mr. Piontek may be imputed to Ms. Burke. The Court's conclusion in this regard is consistent with both the plain language and purposes of the credit counseling provisions of BAPCPA. With respect to the former, the plain language of BAPCPA unequivocally requires that all debtors obtain credit counseling as a condition to bankruptcy eligibility, see 11 U.S.C. § 109(h), and nothing in the Bankruptcy Code suggests that an individual debtor may delegate such obligation to another party. Cf. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1 (2000)(holding that only a trustee or debtor-in-possession may assert a surcharge claim in bankruptcy). With respect to the purposes of the credit counseling provisions, they are intended to force individuals to obtain education and counseling regarding both the consequences of filing for bankruptcy and the non-bankruptcy alternatives available to the debtor to rebuild his or her financial health. See H.R. Rep. 109-31, pt. 1 at 2, reprinted in 2005 U.S.C.C.A.N. 88, 89. Delegating education to third-parties certainly does not contemplate education to the debtor *qua* debtor.